IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| CLAYTON WILLIAMS ENERGY, INC., | ) | CV NO. 7:15-cv-43-DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PACE ENERGY SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

ORDER DENYING MOTION TO DISMISS FOR IMPROPER VENUE AND
DENYING MOTION TO TRANSFER VENUE

      Before the Court is a Motion to Dismiss and Motion to Transfer

Venue filed by Defendant Pace Energy Solutions, Inc. ("Defendant") (Dkt. # 13).

The Court held a hearing on the Motions on May 13, 2015.  At the hearing,

Richard E. Booth, Esq., appeared on behalf of Plaintiff Clayton Williams Energy,

Inc. ("Plaintiff"), and Anna E. Brandl, Esq., and Charles S. Liberis, Esq., appeared

on behalf of Defendant.  After careful consideration of the supporting and

opposing memoranda and the parties' arguments at the hearing, the Court, for the

reasons that follow, **DENIES** Defendant's Motion to Dismiss for improper venue

and **DENIES** Defendant's Motion to Transfer Venue.

1

BACKGROUND

In February 2008, Pace Data Corporation ("Pace Data") entered into a verbal contract with Plaintiff to provide data analysis and processing services. ("Kimbrough Aff.," Dkt. # 13-2 ¶ 4.)  Specifically, Pace Data agreed to evaluate and digitize land title and lease information related to properties owned by Plaintiff and key the data into an electronic mapping program that would allow Plaintiff to digitally access the title and lease information through an on-screen map.  ("Am. Compl.," Dkt. # 10 ¶ 5.)  While the substance of the agreement was verbal, the parties also entered into a written confidentiality agreement on February 14, 2008. (Kimbrough Aff. ¶ 5; "Uzell Aff.," Dkt. # 8 at 2).

In December 2010, Pace Data was closed and Defendant assumed its obligations under the verbal contract.[1]  (Kimbrough Aff. ¶ 7.)  In the course of performing under the contract, Defendant received confidential information from Plaintiff that it used to create the electronic mapping program, which included title and leasing data as well as accounting, engineering, geological, and banking data. (Am. Compl. ¶ 8.)  Through January 2015, Plaintiff had paid Defendant approximately $13.5 million for its services.  (Id. ¶ 9.)

Plaintiff alleges that in May 2014, it discovered that the system used by Defendant to store Plaintiff's confidential information had security issues, and

---

[1] The parties dispute whether Defendant is also bound by the written confidentiality agreement.  (See Kimbrough Aff. ¶ 8; Am. Compl. ¶ 7.)

hired a third party to design a web-based server to allow Plaintiff to securely access its confidential information. (Id. ¶ 10.) In August 2014, Plaintiff requested certain confidential information from Defendant in order to construct the new system, and Defendant refused to provide the requested information. (Id.) Plaintiff then demanded the return of its confidential information and the databases created by Defendant, which Defendant refused. (Id. ¶ 11.) Plaintiff subsequently attempted to download its databases from the website maintained by Defendant, which allegedly closed the website portal to prevent Plaintiff from downloading the data. (Id.) On February 12, 2015, Defendant wrote to Plaintiff and stated that "the remaining cost to acquire the Pace system" was $10.2 million. (Id. ¶12.)

Plaintiff filed suit in the 441st Judicial District Court of Midland County, Texas on February 19, 2015. (Dkt. # 1 at 6.) On April 2, 2015, Defendant removed the case to this Court based on the Court's diversity jurisdiction. Plaintiff filed an Amended Complaint on April 21, 2015, bringing claims against Defendant for breach of contract and conversion. (Am. Compl. ¶¶ 13–20.) Plaintiff seeks damages, attorney's fees, and an injunction prohibiting Defendant from altering or destroying any of Plaintiff's confidential information and related data and requiring Defendant to deliver all of Plaintiff's proprietary information to Plaintiff. (Id. at 9.)

Defendant filed the instant Motion to Dismiss for improper venue and Motion to Transfer Venue on May 6, 2015.  (Dkt. # 13.)  Plaintiff filed a Response on May 11, 2015.  (Dkt. # 15.)

DISCUSSION

I.    <u>Motion to Dismiss for Improper Venue</u>

Defendant argues that 28 U.S.C. § 1391 governs whether venue is proper in this action, and argues that venue is improper in the Western District of Texas because Defendant does not reside in the district and because a substantial part of the events or omissions giving rise to the claim did not occur in the district. (Dkt. # 13-1 at 4–5.)  In a removed action, however, venue is governed by 28 U.S.C. § 1441(a).  <u>Burlington N. & Santa Fe Ry. Co. v. Herzog Servs. Inc.</u>, 990 F. Supp. 503, 504 (N.D. Tex. 1998) (citing <u>Polizzi v. Cowles Magazines, Inc.</u>, 345 U.S. 663, 665–66 (1953)).  Under that provision, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place in which such action is brought."  § 1441(a).  In is undisputed that this Court has original jurisdiction of this matter under 28 U.S.C. § 1332, and accordingly, venue is proper in the Midland-Odessa Division of the Western District of Texas, the district and division

4

in which the action was pending at the time of removal.  The Court therefore

**DENIES** Defendant's Motion to Dismiss for improper venue.

II.    Motion to Transfer Venue

For the convenience of parties and witnesses, a district court may

transfer any civil action to any other district or division where it might have been

brought, or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district

court to adjudicate motions for transfer according to an individualized, case-by-

case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh

Corp., 487 U.S. 22, 29 (1988) (internal quotation marks omitted).  The party

moving for transfer carries the burden of showing good cause.  See Humble Oil &

Ref. Co. v. Bell Marine Serv., Inc., 321 F.2d 53, 56 (5th Cir. 1963); see also In re

Volkswagen of Am., Inc., 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter

"Volkswagen II") ("When viewed in the context of § 1404(a), to show good cause

means that a moving party, in order to support its claim for a transfer, must . . .

clearly demonstrate that a transfer is '[f]or the convenience of parties and

witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action

'might have been brought' in the destination venue."  Volkswagen II, 545 F.3d at

312.  If this requirement is met, "[t]he determination of 'convenience' turns on a

5

number of public and private interest factors, none of which can be said to be of dispositive weight." Action Indus., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "Volkswagen I") (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." Id.

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. Volkswagen II, 545 F.3d at 314 n.10, 315 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the

6

venue chosen by the plaintiff, the plaintiff's choice should be respected." <u>Id.</u> at 315.

Defendant requests that this case be transferred to the Pensacola Division of the Northern District of Florida pursuant to § 1404(a), arguing that the location of evidence and potential witnesses in Pace, Florida makes the Northern District of Florida a clearly more convenient forum.  (Dkt. # 13-1 at 8.)  There is no dispute that this case could have been brought in the Northern District of Florida, where Defendant has its principal place of business and therefore "resides" for the purpose of 28 U.S.C. § 1391.  Defendant must also "clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice."  <u>Volkswagen II</u>, 545 F.3d at 315.

A.   <u>Private Factors</u>

The first private factor requires a court to determine which of the two venues provides easier access to relevant sources of proof.  Defendant argues that the sources of proof are primarily found in its Pace, Florida offices, where it keeps the servers that store the data at issue in this case.  (Dkt. # 13-1 at 9.)  Defendant also argues that many of the witnesses involved are its officers and employees, who reside in the Northern District of Florida.  (<u>Id.</u> at 10.)  Plaintiff responds that its own books and records relevant to the parties' contractual relationship are

located in Midland, and that its officers and employees, based in Midland, would also be expected to serve as witnesses.  (Dkt. # 8 at 7.)  While the data stored on Defendant's servers is certainly relevant to the parties' dispute, equally relevant is the parties' course of performance under the contracts.  Such evidence, which includes communications between the parties, invoices sent by Defendant to Plaintiff and records of Plaintiff's payments to Defendant, and records of office space and equipment used by Defendant in Midland, is located, at least in part, in Midland.  Given that relevant sources of proof are located in both venues, this factor does not weigh in favor of transfer.

The second factor addresses the availability of compulsory process to secure the attendance of witnesses.  Under Federal Rule of Evidence 45, a subpoena may compel a non-party witness to attend a trial more than 100 miles away from the witness's residence or place of employment only if the trial is within the state where the person resides and the witness would not incur substantial expense to travel to the trial.  Fed. R. Civ. P. 45(c)(1).  Additionally, a subpoena may command a non-party to attend a hearing or deposition only if it is within 100 miles of where the person works or resides.  Id.

Here, Brian Kimbrough ("Kimbrough"), Defendant's President, attests that Defendant was forced to lay off nearly all of its employees following the termination of the verbal agreement with Plaintiff, and currently employs only

8

one employee.  (Kimbrough Aff. ¶ 13.)  Such former employees, if they continued

to reside in Florida, would be non-party witnesses outside of the Midland-Odessa

Division's power to subpoena for either deposition or trial.  Defendant has not,

however, specified which of its former employees are potential non-party

witnesses, what such witnesses would testify to, or where they currently reside.

The Court is therefore unable, absent additional information regarding Defendant's

potential non-party witnesses, to find that this factor weighs in favor of transfer.

       The third private factor considers the cost of attendance for willing

witnesses, which has been recognized as "the most important factor under

§ 1404(a)."  Bascom v. Maxim Integrated Prods., Inc., 534 F. Supp. 2d 700, 704

(W.D. Tex. 2008); 15 Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure § 3851 (4th ed. 2008).  "When the distance between an existing

venue for trial of a matter and a proposed venue under § 1404(a) is more than 100

miles, the factor of inconvenience to witnesses increases in direct relationship to

the additional distance travelled."  Volkswagen II, 545 F.3d at 317.  While the

distance between Pensacola and Midland easily exceeds 100 miles, Defendant has

identified no potential witnesses who would be inconvenienced by trying the case

in Midland.  Even if the Court were to assume that Kimbrough will be a witness

for Defendant, his inconvenience would not outweigh the inconvenience of trying

the case in Midland to Plaintiff's (also unidentified) employee witnesses.  This factor therefore does not weigh in favor of transfer.

The final private factor covers all other practical problems.  Here, Defendant argues that the Court should consider the relative resources of the parties, characterizing itself as a "small, private mom-and-pop outfit" that is "struggling to stay solvent and remain open," and stating that it would be subject to severe hardship if required to litigate in the Western District of Texas.  (Dkt. # 13-1 at 9; Kimbrough Aff. ¶ 16.)  Plaintiff, by contrast, is "a publicly traded energy company."  (Dkt. # 13-1 at 9.)  Defendant's financial circumstances, while regrettable, are not relevant to the venue analysis under § 1404(a).  Defendant essentially argues that its preferred venue should be favored because Plaintiff is better able to bear the additional costs associated with litigating in a distant location.  In general, however, "a transfer should not be made where the only practical effect is to shift inconvenience from the moving party to the non-moving party." Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc., 982 F. Supp. 2d 714, 726 (W.D. Tex. 2013).  The Court thus finds that none of the private interest factors weigh in favor of transfer.

B.    Public Factors[2]

The first public factor considers the relative congestion of the courts

in question.  "Generally, this factor favors a district that can bring a case to trial

faster."  Frito-Lay N. Am. v. Medallion Foods, Inc., 867 F. Supp. 2d 859, 871

(E.D. Tex. 2012).  While the median time from filing to trial in the Northern

District of Florida is five months faster than the median time to trial in the Western

District of Texas,[3] court congestion is considered the "most speculative" factor

because "case-disposition statistics may not always tell the whole story."  In re

Genentech, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (applying 5th Circuit law).  The

Court thus does not place undue weight on these statistics, and the difference of

five months weighs only lightly in favor of transfer.

The second public factor considers the local interest in the litigation.

"Jury duty is a burden that ought not to be imposed upon the people of a

community which has no relation to the litigation."  Volkswagen I, 371 F.3d at

206.  The focus of the inquiry is the relative connection of the localities to the

events giving rise to this suit and their corresponding interests in the resolution of

_____

[2] Defendant's Motion does not address any of the public interest factors relevant to
the venue transfer analysis under § 1404(a).  The Court will consider them
nevertheless.

[3] U.S. Courts, Federal Court Management Statistics, December 2014, available at
http://www.uscourts.gov/statistics/table/na/federal-court-management-
statistics/2014/12/31-2

this controversy.  See Volkswagen II, 545 F.3d at 318.  Given that each party's respective headquarters is located in its preferred venue, the negotiation of the contracts took place in Midland, and performance of the contracts occurred in both the Western District of Texas and the Northern District of Florida, neither venue has a significantly greater local interest in the litigation relative to the other.  This factor is therefore neutral.

The third and fourth public factors consider familiarity with governing law and avoidance of unnecessary conflicts of law.  The confidentiality agreement is governed by Texas law, and Plaintiff has represented that "the parties agreed that Texas law will apply."  (Dkt. # 8 at 7, Ex. A ¶ 8.)  Because the Western District of Texas is more familiar with Texas law than a Florida court, this factor weighs against transfer.  The parties have not pointed to any potential issues regarding conflicts of law, and this factor is therefore neutral.

Based on its analysis of the private and public factors, the Court finds that Defendant has failed to clearly demonstrate that the Pensacola Division of the Northern District of Florida is a more convenient venue.  None of the private factors weigh in favor of transfer.  Of the public factors, the relative congestion of the courts weighs only lightly in favor of transfer, the familiarity with governing law weighs against transfer, and the remaining public factors are neutral.  The Court therefore **DENIES** Defendant's Motion to Transfer Venue.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss for improper venue and **DENIES** Defendant's Motion to Transfer Venue (Dkt. # 13).

**IT IS SO ORDERED.**

**DATED:** Midland, Texas, May 19, 2015.

_____

David Alan Ezra
Senior United States Distict Judge

13